UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.: 3:21-cr-22-RJC |
| | ) | |
| v. | ) | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| | ) | |
| JOSEPH RANSOME | ) | |
| | ) | |

NOW COMES the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and hereby submits this sentencing memorandum.

## I. PROCEDURAL BACKGROUND

On January 25, 2021, a Bill of Information was filed in the Western District of North Carolina charging the defendant, Joseph Ransome, with one count of wire fraud in relation to a disaster benefit, in violation of 18 USC § 1343. Doc. 1, Information. On January 29, 2021, the Defendant pleaded guilty to that count. *See* Docs. 3 and 4, Plea Agreement and Factual Basis. The Factual Basis and the Statement of Relevant Conduct were fully incorporated into the Presentence Report ("PSR"). Doc. 21, PSR at ¶¶ 5-10 and 12-14.

## II. FACTUAL BACKGROUND

In March 2020, in response to the many challenges presented by the pandemic, Congress passed the CARES ACT, Pub. L. 116-136. The CARES Act expanded states' ability to provide unemployment insurance for many workers impacted by the COVID-19 pandemic, including for workers who are not ordinarily eligible for unemployment benefits. The CARES Act provided for an additional $600 weekly payment, known as "Federal Pandemic Unemployment Compensation" or "FPUC," to certain eligible individuals who were receiving other benefits under state law.

1

From March 2020 through July 2020, the Defendant applied for fraudulent unemployment insurance (UI) benefits in North Carolina, New Jersey, Connecticut, Florida, Minnesota, New York, Massachusetts, Main, Washington, and Illinois. The filed claims for UI benefits included false representations about the Defendant's place of employment and reasons for termination. For example, the Defendant falsely claimed to have been laid off from Walmart in North Carolina due to COVID, when in truth he was terminated for non-COVID-related reasons. In addition, Ransome claimed prior employment with at least four companies that he never worked for and falsely claimed he was laid off from some of the companies because he had been diagnosed with COVID. On some occasions, Ransome also used a social security number and mailing address that did not belong to him.

In addition to the UI fraud, Ransome fraudulently applied to the Small Business Administration (SBA) for four separate Economic Injury Disaster Loans (EIDL). Ransome used four different fictitious entities in these applications – Ransome Investments, Ransome Financial, Rosa Milk and Dairy, and Ransome Pizza – and provided SBA with false financial information to purportedly qualify for the loans. The SBA paid out one of the loans and deposited $9,000 into Ransome's bank account, though the SBA eventually determined the application was fraudulent and recovered the funds. In an additional fraud, Ransome used another individual's social security number to apply for a car loan, though he used his own name in the application. Ransome has not defaulted on this loan. In total, the intended loss is more than $163,000[1].

## III. ADVISORY GUIDELINES

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir.

---

[11] After receipt of the fraudulent UI benefits, many of the states uncovered Ransome's fraud and were able to recoup some of the fraudulently deposited funds. *See* Doc. 21 at ¶ 14 (Chart).

2008).  The advisory Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).  The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).  "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id*. at 351.

The PSR calculated a total offense level of 16 and a criminal history I, corresponding to an advisory guideline range of 21 to 27 months.  Doc. 21 at ¶¶ 21-31, 44, and 76.

### IV.     18 USC § 3553(a) SENTENCING FACTORS

The appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).  The 18 U.S.C. § 3553(a) factors dictate a sentence within the advisory guideline range.  While the post-*Booker* sentencing regime affords the sentencing court discretion in selecting the appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the advisory Guidelines should be the starting point and the initial benchmark" in determining the appropriate sentence. *Gall*, 522 U.S. at 49.  The Fourth Circuit has stated it even more strongly, describing the Guideline offense level as "the *crucial* 'starting point,' as well as the 'initial benchmark'" in the sentencing process. *United States v. Lewis*, 606 F.3d 193, 199 (4th Cir. 2010) (quoting *Gall*, 522 U.S. at 49) (emphasis added).

A lengthy period of incarceration also serves to deter not just the Defendant but other would-be fraudsters. Regarding specific deterrence and the need to protect the public, according to a recent report issued by the U.S. Sentencing Commission, longer sentences deter recidivism. *Length of Incarceration and Recidivism*, Ryan Cotter, PH.D., April 2020, at 30 ("The Commission found a statistically significant deterrent effect for offenders incarcerated for more than 60 months when compared to similar offenders incarcerated for shorter periods of time.").[2]

As to general deterrence, as the Eleventh Circuit has noted, "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id.* at 1227. Put differently, as the Seventh Circuit has explained, "[t]he system of penalties under the Guidelines is constructed on the belief that . . . longer sentences of imprisonment, are more effective deterrents. A large body of evidence supports this intuition." *United States v. Turner*, 998 F.2d 534, 536 (7th Cir. 1993).

The nature and circumstances of the offense and the need to afford adequate deterrence warrants a guidelines sentence. The Defendant's scheme to fraudulently obtain more than $150,000 in unemployment benefits depleted the available funds for legitimate applicants. The Defendant's actions can only have been motivated by self-interest and greed at a time when millions of Americans were suffering from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the unemployment benefits program and other programs designed to provide critical economic assistance. The United States' recommended

---

[2] Available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf.

sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to the Defendant and other offenders that there are serious consequences for defrauding government pandemic relief programs. Actors like the Defendant who seek to defraud these programs not only drain the program of limited funding, they also make it more difficult for administrators of government and other relief programs to get aid to individuals that qualify for and need it. The Defendant's sentence will serve as a warning and deterrent to others inclined to exploit pandemic relief programs. *See United States v. Morgan*, 635 F3d. Appx. 423, 450 (10th Cir. 2015) ("Deterrence is a crucial factor in sentencing decisions for economic and public corruption crimes…"); *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014) ("In a number of opinions … we have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed."). The Fourth Circuit has explicitly recognized the importance of incarceration for defendants convicted of white collar crimes such as tax evasion, theft, fraud and embezzlement. *See United States v. Engle*, 592 F3.d 495, 501 (4th Cir. 2010).

V.     TWO-LEVEL UPWARD VARIANCE

The United States moves for a two-level upward variance from a Guidelines range of 16 (21-27 months) to a Guidelines range of 18 (24-30 months). In the filed plea agreement, the parties agreed that a two-level enhancement was appropriate under USSG § 2B1.1(b)(12) because the offense involved conduct described in 18 USC § 1040. *See* Doc. 3 at ¶ 7(b). Section 1040 generally covers fraud in connection with major disaster or emergency benefits. The fraud must be in a matter paid in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5170) or an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and

5

Emergency Assistance Act (42 U.S.C. § 5191).

In April 2021, the Department of Justice issued new guidance to Assistant United States Attorney's prosecuting COVID-19 fraud cases regarding the use of 18 USC § 1040, and the related USSG enhancement, in relation to CARES Act funds. The guidance directed that AUSAs should use restraint in seeking this two-level enhancement because the conduct does not involve funds obtained under the Stafford Act.[3] As a result, the United States filed an objection to the presentence report requesting that the enhancement not be applied. At the time of the objection the United States also notified the Defendant that the fact that Defendant's conduct related to disaster benefits issued under a different statute may be a basis for a two-level upward variance.

The United States respectfully moves for such a two-level upward variance. Ransome's conduct involved taking advantage of a world-wide pandemic and the resulting emergency governmental efforts to ameliorate the impact. The Defendant exploited the fact that the unemployment benefits program was designed to release funds as quickly as possible in order to provide a lifeline to individuals across the country. Even if the enhancement in the Guidelines does not specifically apply to conduct under the CARES Act, the reasoning behind such an enhancement – to punish defendants who seek to profit from national disasters and who take advantage of the government's desire to get money quickly into the hands of those hurt by the disasters – still applies.

---

[3] On March 13, 2020, President Trump declared the existence of a national emergency pursuant to § 501(b) (42 U.S.C. § 5191(b)) of the Stafford Act in response to the COVID-19 pandemic. However, the funds involved in Ransome's case were ultimately authorized under the CARES Act, Pub. L. No., 116-136, not under the Stafford Act. The CARES Act expanded unemployment benefits payments – such as those Ransome admitted to fraudulently obtaining.

## VI. CONCLUSION

For the foregoing reasons, the United States recommends a sentence of 24 months, the low-end of the advisory guidelines range, as well as a term of supervised release, and restitution of $44,172[4]. *See* Doc. 21 at ¶¶ 15-17 (full discussion of breakdown of restitution). A sentence of 24 months, the low-end of the advisory guideline range, reflects the seriousness of the offense and deters both the Defendant and others from defrauding government pandemic relief programs.

RESPECTFULLY SUBMITTED, this the 18th day of January, 2022.

> DENA J. KING
> UNITED STATES ATTORNEY
>
> /s/ Caryn Finley
> Assistant United States Attorney
> United States Attorney's Office
> Western District of North Carolina
> New York Bar Number: 3953882
> 227 West Trade Street, Suite 1650
> Charlotte, North Carolina 28202
> Telephone: (704) 344-6222
> E-mail: Caryn.Finley@usdoj.gov

---

[4] Pursuant to a Joint Motion for Turnover of Funds and to Accept Early Payment of Monetary Penalties, Doc. 18, the Court ordered NASA Federal Credit Union to remit $27,432 to the Clerk of Court to be applied to the Defendant's restitution to be imposed in this matter. *See* Doc. 20.